**UNITED STATES DISTRICT COURT**
**IN THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| Alonzo Voelker, Petitioner | " | CR# 00-18T |
| v. | " | CV# 00621-T |
| United States of America, Respondant | " | **MOTION TO CORRECT JUDGMENT PURSUANT TO RULE 60(b), FED.R.CIV.P.** |

Essex County )
ss
New York State )

**COMES NOW**, Alonzo Voelker, hereinafter, "Petitioner" in the above captioned matter, appearing specially in propria persona and moves this Honorable Court pursuant to the above referenced Rule to correct judgment previously decided by Judge Ernest Torres of a pleading titled to 28 USC § 2255.

Petitioner in accordance with this Motion filed in propria persona, respectfully requests that this Honorable Court construe this humble filing consistant with the Supreme Court's finding in Haines v. Kerner, 404 US 519, 30 L.Ed 2d 652, 92 S.Ct. 594 (1972) wherein the Court stated:

> "Pro Se litigants pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers...."

The authority for this Motion has most recently (June 23, 2005) been the topic of decision by the Supreme Court in the matter of Gonzales v. Crosby, No. 04-6432, wherein the Court concluded the following; "Rule 60(b) would be available to challenge the integrity of the District Court's prior § 2255, § 2254 denial." To allow a matter to stand that was based upon an errorneous

reasoning in informing judgment would undermine the integrity of the judiciary.

Petitioner is cognizant of the narrow interpratation as set forth in Gonzales as it relates to asserting or re-asserting any 'claims' that could appear as an attempt to circumvent the gate keeping requirement(s) as set forth in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") codified at 28 USC § 2244.

Petitioner, therein implores the indulgence of this Court to disregard any of this pleading that may be reasonably construed as an attempt to set forth a 'claim' expressed and/or implied, Haines v. Kerner, Supra, and rely upon the questions and historical analysis impacting the legal reasoning that were previously set forth in denying petitioner's "good faith" filing[s].

QUESTIONS PRESENTED

Did the District Court correctly interpret the penalty provision(s) of Title 21 USC § 841(a)(1) as a single statute when imposing the penalty upon petitioner for the violations pleaded to ?

Did the District Court correctly interpret the provision(s) as set forth in 18 USC § 3553(a) which directs the District Court insofar as the factors to be considered in imposing sentence ?

Does the Doctrine of Stare Decisis implicate the integrity of the prior proceedings pursuant to 28 USC § 2255 ?

Petitioner does not dispute (at this time) his conviction, however seeks de novo review of the three legal challenges to his sentence.

I. HISTORICAL SYNOPSIS

The petitioner, was charged by a Grand Jury with conspiracy to distribute crack cocaine and with three (3) distribution counts of that drug in violation of 21 USC §§ 841 and 846. Additionally, the § 846 allegation is void as § 846

rests upon punishments for §§ 841(a)(1), which are found at 841(b)(1).

On or about Febuary 28, 2000, petitioner, entered into a written plea agreement. Relevently, petitioner waived indictment agreeing to plea guilty to the information lodged against him pursuant to Rule 7(b), Fed.R.Crim.P. In which the Government agreed not to persue the charge of 21 USC § 848 ("CCE") as part of the inducement of the agreement. Therefore, being charged and stipulating to the facts necassary to sustain conviction under those individual statutes (3 counts of 21 USC §§ 841, and 1 count of 846), In which has bound both parties by the inclusion of an unqualified integration clause in which states within its "four courners":

> Any additions, deletions, or modifications to this agreement must be made in writing and signed by all parties in order to be effective. (Plea Agreement ¶ 13)

Subsequent to petitioner's guilty plea, a Pre-Sentence Report was prepared, and it was determined that petitioner's Base Offense Level ("BOL") was 28 based on the drug quantity that was found by the United States Department of Probation ("USDP"), and adopted by the Court by the "perponderance of the evidence" standard. In applying Section § 2D1.1(c)(6) of the United States SEntencing Guidelines ("USSG"). "PSR" ¶ 13.

In addition, it was determined that Section § 3B1.1(a), "USSG", also applied as a witness had previously stated in an FBI 302, that petitioner was acting in a leadership/organizer role, that involved atleast 5 people. "PSR" ¶15

Releventl, the "PSR" tracked the language of § 2D1.2 (use or attempted use of a person less than eighteen years of age), although there was no specific citation it recomended that a two level adjustment must additionally be assessed against petitioner. "PSR" ¶ 16.

On August 15, 2000, the petitioner was sentenced by the United States District

Court of Rhode Island, (Ernest Torres, CUSDJ), to 188 months of imprisonment as to each count of information, to be run concurrent to one another and a five year term of supervised release was imposed. The above stated conduct composed by the United States Department of Probation ("USDP") was adopted by the "USDC" in its entirety by the "perponderance of the evidence" standard of review.

(a). DIRECT APPEAL

Subsequent to the August 15, 2000, sentencing, petitioner filed a timely Notice of Appeal. The Court appointed Darla J. Mondou, Esq. as appellate counsel who filed a Due Process, and jurisdictional claim based on the reasoning in the historic case of Apprendi v. New Jersey, 530 US 466, 120 S.Ct. 2348 (2000). As Apprendi was farely new at the time, this appeal questioned if Apprendi principles applied in the context of a plea. (Despite the fact that Apprendi himself plead guilty). While contending that the "USDC's" combined imposition of 188 months of imprisonment (15 years/8 months), and five years of supervised release, exceeded the defualt [statutory maximum] of the Congressional Code which was at that time reasoned at 20 years. For drug quantity that was not alleged in a jurisdictionally defective indictment. Additionally, it was deemed a jurisdictional defect for the Court to allow petitioner's sentence to exceed this reasoned "statutory maximum" boosted on criminal history calculations when the Court did not properly file notice pursuant to 21 USC § 851(a).

The First Circuit Court of Appeals affirmed conviction based on the decision of United States v. Duarte, 246 F.3d 56 (1st Cir. 2001). (Holding that Duarte received Notice in the form of Appendix's to his indictment, drug amount contained in his written plea agreement, and defendant admitted at plea colloquy). Despite the fundamental differences of petitioner only having notice within his plea colloquy. The First Circuit Court of Appeals held that petitioner may have an Apprendi error

but this violation did not constitute "plain error" via the following quote. See e.g., Duarte, 246 F.3d at 60 (noting without deciding that arguably when a defendant "pleaded guilty to dealing in a specific volume of contraband, [he may have] surrendered any right either to have the indictment phrased more specifically or to have a jury determine drug quantity").

On December 20, 2001, the First Circuit Court of Appeals affirmed the judgment of conviction and sentence as to petitioner. United States v. Voelker, __F.3d__ (1st Cir. 2001/No. 002161)(Unpublished).

(b). 28 U.S.C. § 2255

On December 26, 2001, petitioner filed a timely motion in propria persona under § 2255. Succintly, alleging that his sentencing counsel, Carmine J. Giuliano, Esq., was ineffective for failing to file a motion to practice in the Court Pro Hac Vice until the day of sentencing. In which on the record he gave numerous personal reasons absent any legal consequence in which he did not file written objections to the "PSR" in a timely manner pursuant to Local Rules of the District Court of Rhode Island. Additionally, that the "USDC" did not grant the continuance asked for by counsel to remedy the situation, but sought to force him to argue objections unprepared in front of the Court.

Relevently, as pertaining to this petition in which questions the integrity of judgment. Petitioner, asserted that his plea was not voluntary based on the uncharged, and not pleaded to enhancements to petitioner's sentence. In that petitioner was induced to plead guilty in waiving the indictment and stipulating to the information filed against petitioner. To avoid the possible prosecution under 21 USC § 848 ("CCE") under the assumption that he was pleading as a regular participant within the conspiracy. Additionally, the government was

giving with one hand while subsequently taking with the other in enhancing the sentence with numerous elements that were not part of the written plea agreement that featured an unqaulified integration clause. As a result the petitioner requested "specific plea performance." As articulated within Santobello v. New York, 404 US 257 (1971). See (Affidavit(s) by Alonzo Voelker 12/6/02-3/6/03).

On October 21, 2003, the United States District Court of Rhode Island, (Ernest Torres, CUSDJ), filed a Memorandum and Order denying petitioner's § 2255.

On October 27, 2003, petitioner requested Certificate of Appealability in the "USDC". In which was subsequently denied on November 20, 2003, by the District Court.

On November 21, 2003, petitioner filed a Notice of Appeal advancing the "COA" into the First Circuit Court of Appeals. In which was subsequently denied by the First Circuit on June 18, 2004.

DISCUSSION

The jurisdiction in this particular proceeding alluded to the Court's method to take action. In which is limited to the violation as alleged in the charging instrument and the expression of the condition that supports the contended violation.

The practice of sentencing defendants pursuant to generic statutes, i.e. 21 USC § 841(a)(1) has long been recognized as a time honored concept in American Jurisprudence as violative of ones rights. Its roots are long antecedent to the modern acknowledgment that interpret the United States "Code" system of law(s).

> "It is an elementary principle of criminal pleading, that where the definition of an offence [sic], whether it be

> at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offence [sic] in the same generic terms as in the definition; but it must state the species, it must descend to the particulars..." as "Vague and indefinite allegations of the kind are not sufficient to inform the accused in a criminal prosecution of the nature and cause of the accusation against him, within the meaning of the Sixth Amendment of the Constitution...." United States v. Cruikshank et al, 92 US 2 Otto 542, 23 L.Ed 588 (October Term 1875).

In which Modern day jurists have recognized this "fatal" error as well United States v. Vineyard, 266 F.3d 320, 325 (4th Cir. 2001); United States v. Pupo, 841 F.2d 1235, 1239 (4th Cir. 1988)(A mere statutory citation in the indictment is insufficiant, precisely because it does not demonstrate whether the 5th Amendment mandate has been followed, Id. at 326).

Upon demonstrating the Supreme Courts concern for specific clarity in an indictment, and acknowledging that the above cited decision occured at a time prior to the codification of the laws of the United States as well as the Sentencing Reform Act, petitioner advances the Court to a time almost 100 years later, after the laws have been codified, but prior to the Sentencing Reform Act.

In 1966, the landmark Supreme Court decision regarding rights of an individual were stated with specificy in Miranda v. Arizona, 304 US 436, 16 L.Ed 2d 694, 86 S.Ct. 1602 wherein the Court stated:

> "where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them...."

Shortly there after, a decision once again reinforcing the rights of an individual were stated by the Supreme Court in the matter of In re Winship, 397 US 358, 90 S.Ct. 1068, 25 L.3d 2d 368 decided in 1970 and declared the

following:

> "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged...."

At approximently the same time (1970) the Comprehensive Drug Abuse Prevention and Control Act was enacted § 401(a)(1), 21 USC § 841(a)(1); 18 USCA § 641. The distinctive subdivisions of § 841(a)(1) and how they are applied under the Sentencing Reform Act are the focus of petitioner's legal challenge to the integrity of the Courts previous ruling(s).

It may also be worthy of note that in 1970 the Supreme Court rendered a decision once again addressing ones rights, in the matter of Bivens v. Six Unknown Agents, 430 US 388, 29 L.Ed 2d 619, 91 S.Ct. 1999 as they related to a Fourth Amendment violation the Court stated:

> "where federally protected rights have been invaded, it has been the rule from the begining that the courts will be alert to adjust their remedies so as to grant the necessary relief." id. at § 255 see: Bell v. Hood, 327 US at 684, 94 L.Ed at 944, 13 ALR 2d 383.

THE REASONING APPLIED BY THE COURT COMPROMISED THE INTEGRITY OF THE PROCEEDINGS

Petitioner's previous arguments were based on the principles of the decision of Apprendi v. New Jersey, 530 US 466 (2000) by holding that the Constitution requires that any fact that increases a criminal defendant's sentence must be determined beyond a reasonable doubt. The Supreme Court's opinion in Blakely v. Washington, clarified the reasoning the Court sought to employ in Apprendi. Blakely, 124 S.Ct. 2531, 2537 (2004).

Succintly, since Blakely specifically addressed a sentencing scheme from the state of Washington. The Supreme Court applied it's Apprendi reasoning through Blakely to the United States Sentencing Guidelines. See United States

v. Booker, 76 CrL 251 (US 2005).

Booker is the most recent series of decisions in which the Supreme Court has addresses the Constitutionallity of various criminal sentencing schemes. In Apprendi v. New Jersy, 530 US 466, 490 (2000), the Honorable Court declared that, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum [other than the fact of a prior conviction] must be submitted to a jury and proved beyond a reasonable doubt."

The Supreme Court based its Apprendi decision on the Constitution's Fourteenth Amendment proscription of any deprivation of liberty without Due Process of law and the Sixth Amendment right of criminal defendants to a speedy and public trial by an impartial jury, which "together...entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime in which he is charged, beyond a reasonable doubt.'" Apprendi, at 476-77 (Quoting United States v. Gaudin, 515 US 506, 510 (1995)).

In Apprendi, the Honorable Court cited In re Winship, 397 US 358 (1970), as precedent for the notion that the due process clause guarantees a criminal defendant the right to have every element that increases his sentence beyond the "statutory maximum" proven beyond areasonable doubt. The Court pointed out that, in In re Winship, it established that the reasonable doubt standard is so vital to criminal procedure, and that "since Winship, we have made clear beyond preadventure that Winship's due process and associated jury protections extend, to some degree, 'to determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence.'" Apprendi, 530 US at 484 (Quoting Almendarez-Torres v. United States, 523 US 224, 251 (1998)(Scalia, J. dissenting)).

The Blakely Court vastly clarified the scope and reasoning in Apprendi. The

Blakely opinion established that "the 'statutory maximum' for Apprendi purposes (emphasis added) is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant...In other words, the relevent 'statutory maximum' is not the maximum he may impose without any additional facts." Id. at 2537.

Upon the Supreme Court's explicitly articulated opinion in Blakely in clarifying its reasoning in Apprendi, and applying that reasoning to the "USSG" through Booker.[1] There can now be no doubt that the myriad of reasoning the Court employed in rendering judgment within the context of § 2255. Has seriously implicated the integrity of the entire proceedings.

THE DOCTRINE OF STARE DECISIS APPLIES TO
THE INTEGRITY OF THE UNDERLYING PROCEEDINGS

Petitioner does not assert issues of interpretation or application of law; but the reasoningemployed in the meaning of the particular phrase "statutory maximum" as it pertains to purposes of the ruling of Apprendi. Since the meaning of the phrase became the basis in which the Court rendered judgment.

In the actual decision of Apprendi, the Supreme Court did not specifically define the term "statutory maximum." Later within the Blakely decisions opinion the Supreme Court clarified the term "statutory maximum" for Apprendi purposes.

The First Circuit Court of Appeals adopted the reasoning of various Court's of Appeals through United States v. Robinson, 241 F.3d 115, 119-20 (1st Cir. 2001) in holding that the relevent "statutory maximum" was the statute of

---

1 The Booker decision resulted in a de facto Guide Lines Regime, not readily distinguishable from that which the Supreme Court found violative of the Sixth Amendment. As this is not relevent to the current proceedings the petitioner will not address this issue.

of the Congressional Code. Where the various Courts of Appeals decided on its own accord that Apprendi error resulted in the application of a default "statutory maximum" of 20 years pursuant to 21 USC § 841(b)(1)(c). Until the Supreme Court themselves clarified through it's opinion in Blakely wherein they stated what they meant by the term "statutory maximum" for Apprendi purposes. (See page 10)..

The previous points are evident by the clear and consistant commentary based on the decision of Apprendi in Blakely/Booker's concurring opinions as well as the dissents wherein Justice O'Connor's dissent she stated that: "all criminal sentences imposed under the federal and state guidelines since Apprendi was decided in 2000, arguably remain open to collateral attack." Blakely at 2459 (O"Conner, J., Dissenting). The persuasive language utilized by Justice O"Connor makes no referance to defendant's that had previously made Apprendi arguments before their case was final. Leading substantial credence to the compromised integrity of the underlying proceedings. As well as suggesting that these various Apprendi/Blakely/Booker errors are fatal, and not subject to legal doctrine intended to limit its effect.[2]

Considering that the First Circuit defined the term "statutory maximum" in the previous panel of Robinson, 241 F.3d 115, 119-20 (1st Cir. 2001). That meaning coupled with the contention that petitioner's assumed Apprendi error did not constitute "plain error" as articulated in the decision of the First

---

2 The Supreme Court recently agreed to hear the case of Washington v. Recuenco, No. 05-83 (10/17/05). Where they deemed it necassary to clarify for the lower Courts whether Blakely constitutes fatal error that is not subject to the "harmless error" review adopted by the Federal Courts.

Circuit in United States v. Duarte, 246 F.3d 56 (1st Cir. 2001)[3] became the basis of the underlying judgment. When the Supreme Court, themselves made the clarification through their opinion in Blakely, and the First Circuit's recent panel of United States v. Savarese, 385 F.3d 15, 21 (1st Cir. 2004) acknowledged that clarification. Because the underlying judgment was based on the meaning of "statutory maximum" within the panel of Robinson, 241 F.3d 115 (1st Cir. 2001), the acknowledgment in Savarese holds this judgment in error, and implicates the Doctrine of Stare Decisis. See Joy v. Penn-Harris-Madison School Corp., 212 F.3d 1052, 1065-66 (7th Cir. 2000)(For this Court, "[T]he Doctrine of Stare Decisis demands that we abide by a recent decision of one panel of this Court unless the panel has withdrawn the opinion or the Court en banc has overruled it"). United States v. Johnson, 457 US 537, 549, 102 S.Ct. 2579, 73 L.Ed 2d 202 (1982)("In such cases, it has been a foregone conclusion that the rule of the later case applies in earlier cases because the later decision has not infact altered that rule in any material way").

In circumstances that mirror the current proceedings the Supreme Court has consistantly applied the Doctrine of Stare Decisis wherein they stated:

> "In cases where statutory precedents have beeen overruled the primary reason for the Court's shift in position has been the intervening development of law, through either the growth
> (continued.......)

3 The recent Second Circuit ruling of United States v. Cordoba-Mergas, No 04-3131-cr(L)(2nd Cir. 9/7/05), has cast doubt on the principles that were employed by the First Circuit in denying petitioner's proceedings through United States v. Duarte, 246 F.3d 56 (1st Cir. 2001). Cordoba-Mergas, has held in support of petitioner's previous arguments that a plea of guilty does not cure the jurisdictional error based on the Court's ability to act on uncharged elements of an offense. Releventley, Duarte, was featured in in f. note 6, of that opinion. Stating that the First Circuit withheld giving a substantive opinion of the situation. (Which relevently decided petitioner's Apprendi error did not constitute "plain error.")

> of judicial doctrine or further action taken by Congress. Where such changes have removed or weakened the conceptual underpinnings from the prior decision or where the later law has rendered the decision irreconcilable with competing legal doctrines or policies, the Court has not hesitated to overrule an earlier decision."

See In Re Zurko, 142 F.3d 1457, 1458 (Fed. Cir. 1998); Quoting Patterson v. McLean Credit Union, 491 US 164, 172, 73, 109 S.Ct. 2353, 2370, 105 L.Ed 2d 132 at 173-74 (1989); See also Payne v. Tenessee, 501 US-, 115 L.Ed 2d 720, 111 S.Ct. at 737 f.n. 1 (1991)(Collecting cases of the application of the Doctrine of Stare Decisis).

CONCLUSION

In conclusion, petitioner once again requests the Court's indulgence in recognizing that providing legal analysis as to the Court's reasoning as they relate to the underlying proceedings (§ 2255), petitioner makes no attempt to set forth any 'claims', however does seek to impune the integrity of the judicial reasoning that was used to deny him relief. The relevent sentence was based on 'charges' that petitioner was never properly charged with. There is no valid indictment for the crime(s) that were utilized to enhance petitioner's sentence, as violation of a generic statute with no specified quantity of drugs constitutes a different charge than 21 USC § 841(a)(1) with a specified quantity of drugs, and the applicable statutory penalty(ies) vary accordingly. By sentencing petitioner to a term of imprisonment of 188 months, 10 years longer than the corresponding guide line range for wich he was charged. The District Court effectively convicted him for wich he was never indicted for.

The District Court only had jurisdiction to sentence petitioner to a term equal to or less than the statutory maximum of the offense charged, regardless of the finding of the jury/judge in this matter, the absence of jurisdiction

to sentence petitioner to the crime involving the larger quantity with added elements of the offense can not waive the jurisdictional failure to indict.

The denial of petitioner's previous pleadings were based upon the reasoning of a term that has been clarified and recognized by the First Circtuit Court of Appeals, as the District Court was without lawful jurisdiction to maintain an extraordinary sentence of 188 months (15 years/8 months), over 10 years beyond the statutory maximim (guideline range) for the charges as they were alleged in the indictment or pleaded to by petitioner. Furthermore, erroneously applying an un-Constitutional Statute (18 USC § 3553) as validation for multiple enhancements that the law does not make criminal as to petitioner. The sentence reduces the function of a jury to that of a "Gatekeeper" as the sentence imposed represents the quintessential tail that wags the proverbial dog and requires judicial action to remedy this gross injustice. In the notion of the Supreme Court's statement in Bivens v. Six Uknown Agents, 430 US 388, 29 L.Ed 2d 619 wherein they stated:

> "where federally protected rights have been invaded, it has been the rule from the begining that the courts will be alert to adjust their remedies so as to grant the necessary relief." Id. at 944.

Dated this 7th day of December A.D. 2005

Sincerely Presented,

Alonzo Voelker

Alonzo Voelker
#04836-070
FCI Ray Brook
P.O. Box 9005
Ray Brook, NY 12977

CERTIFICATE OF SERVICE

I, Alonzo Voelker, as petitioner herein, do hereby attest and affirm that all of the facts and statements as made herein are true, correct, certain and complete and are not meant to mislead, further they are made knowing the penalty for bearing false witness.

On this 7th day of December A.D. 2005, a true and correct copy of the enclosed was mailed via firs class mail, pre-paid postage and addressed in the following manner to wit:

United States District Court
c/o Clerk of Court
1 Exchange Terrace
Providence, RI 02903

&

U.S. Attorney's Office
50 Kennedy Plaza
Providence, RI 02903

Alonzo Voelker
Alonzo Voelker